*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0239p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 12-4508

*v.*

DAMON JOINER,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:07-cr-00233-1—Christopher A. Boyko, District Judge.

Argued: July 23, 2013

Decided and Filed: August 20, 2013

Before: BOGGS and McKEAGUE, Circuit Judges; and BECKWITH, Senior District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Jeffrey B. Lazarus, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jeffrey B. Lazarus, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

BOGGS, Circuit Judge. In 2007, defendant-appellant Damon Joiner pled guilty to distribution and possession, with intent to distribute, of 129.77 grams of cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(B).

---

[*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

1

Although Joiner was subject to a 240-month statutory minimum penalty, the government moved for a downward departure based on substantial assistance, and Joiner was sentenced to 107 months of imprisonment and five years of supervised release. Following the Fair Sentencing Act of 2010 and the corresponding crack-cocaine-guideline amendments implemented by Amendment 750, Joiner moved for a sentence reduction under 18 U.S.C. § 3582(c)(2). The district court denied Joiner's motion, and Joiner now appeals. For the reasons that follow, we affirm the district court's order.

# I

Joiner pled guilty to crimes involving 129.77 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and (b)(1)(B). At the time of his original sentencing, this quantity of crack cocaine corresponded to a base offense level of 30. *See* U.S.S.G. § 2D1.1(c) (2007). Factoring in a three-level reduction for acceptance of responsibility, Joiner had a total offense level of 27 and a criminal-history category of V, implying a guideline range—as determined from the § 5A Sentencing Table—of 120-150 months.[1] *See* U.S.S.G. § 5A (2007). However, at the time of Joiner's sentencing in 2007, offenses involving more than 50 grams of crack cocaine carried a statutory minimum penalty of 10 years of imprisonment, and for a defendant who had "a prior conviction for a felony drug offense [that had] become final," the minimum penalty increased to 20 years of imprisonment. *See* 21 U.S.C. § 841(b)(1)(A) (2007). Because Joiner stipulated in his plea agreement that he had a prior conviction for a felony drug offense—triggering the 240-month statutory minimum—and because this statutory minimum was higher than Joiner's § 5A guideline range, all parties agreed that he was subject to the statutory minimum penalty of 240 months of imprisonment.

At Joiner's sentencing hearing, the government noted that while, under Joiner's plea agreement, it had agreed to recommend a four-level downward departure from the 240-month statutory minimum for his substantial assistance, it now felt that Joiner's

---

[1]Throughout this opinion, the term "§ 5A guideline range" is used to describe the guideline range derived from the Sentencing Table in § 5A that corresponds to a defendant's base offense level (factoring in any relevant adjustments) and criminal-history category *before* incorporating any relevant statutory minimum.

cooperation deserved a five-level departure. The district judge granted the government's motion for substantial assistance, enabling Joiner to be sentenced below the otherwise applicable statutory minimum. However, rather than using the 240-month statutory minimum as the starting point for Joiner's downward departure, *cf. United States v. Stewart*, 306 F.3d 295, 332 (6th Cir. 2002) (holding that the statutory mandatory minimum is the appropriate starting point from which to calculate a downward departure for substantial assistance), the district judge used a different method put forward by the parties in Joiner's plea agreement. The judge first indicated that the 129.77 grams of crack cocaine involved in Joiner's crimes would normally subject him to a base offense level of 30 under § 2D1.1. The district judge then increased Joiner's base offense level to 33—the lowest level that, when coupled with Joiner's criminal history, would correspond to a § 5A guideline range containing 240 months, the statutory minimum. The judge then reduced Joiner's base offense level by three for his acceptance of responsibility and then by five due to his substantial assistance. This resulted in a final base offense level of 25. With Joiner's criminal-history category of V, his corresponding guideline range was 100 to 125 months. The district court ultimately imposed a sentence of 107 months of imprisonment to be followed by five years of supervised release.

Years later, the Fair Sentencing Act of 2010 (FSA) increased the quantity of crack cocaine required to trigger the 20-year statutory minimum for a defendant convicted of a prior felony drug offense from 50 grams to 280 grams. *See* 21 U.S.C. § 841(b)(1)(A) (2013). Because Joiner's crime involved 129.77 grams of crack cocaine, he would have been subject to a lower, ten-year statutory minimum had he been sentenced after passage of the FSA, *see* 21 U.S.C. § 841(b)(1)(B) (2013), but, as both this court and the Supreme Court have made clear, the FSA's lower statutory minimums do not apply to defendants sentenced before passage of the FSA, *see Dorsey v. United States*, 132 S. Ct. 2321, 2336 (2012); *United States v. Hammond*, 712 F.3d 333, 336 (6th Cir. 2013). Nevertheless, the 2011 crack-cocaine-guideline amendments, also prompted by the FSA, did lower the § 2D1.1 base offense levels for crack-cocaine offenses and thus also lowered the § 5A guideline range to which Joiner would have been subject *absent the existence of a statutory minimum. See* U.S.S.G. Amend. 750.

Joiner relied on this change in moving to modify his sentence pursuant to 18 U.S.C. § 3582(c).

The district court denied Joiner's request for a sentence reduction, holding that Amendment 750 did not have the effect of lowering Joiner's "applicable guideline range." To reach this result, the court relied on our decision in *United States v. Hameed*, 614 F.3d 259, 268–69 (6th Cir. 2010), which held that when a defendant's "mandatory minimum exceeded the otherwise applicable guideline range, the sentencing court must use the mandatory minimum sentence as the starting point for any downward departure." Dist. Ct. Op. at 4 (citing *Hameed*, 614 F.3d at 268). Accordingly, the district court ruled that when a defendant was subject to a statutory minimum at his original sentencing but received a downward departure for substantial assistance, a "Guidelines amendment [that] lowered the sentencing range under Section 2D1.1 . . . 'did not lower an "applicable" guideline range as required by U.S.S.G. § 1B1.10(a)(2)(B).'" *Ibid.* (quoting *Hameed*, 614 F.3d at 269). Thus, because the same 240-month statutory minimum applied to Joiner at his sentence-reduction proceeding as it did at the time of his original sentencing—because of the FSA's non-retroactivity—the district court held that his "applicable guideline range" had not been lowered by changes to the § 2D1.1 crack-cocaine guidelines and that he therefore was not eligible for a sentence reduction under § 3582(c). Joiner now appeals.

## II

Normally, this court reviews a district court's denial of a motion to modify a sentence under 18 U.S.C. § 3582(c)(2) for abuse of discretion. *See United States v. Moore*, 582 F.3d 641, 644 (6th Cir. 2009). However, where a district court concludes, as it did here, that it lacks the authority under 18 U.S.C. § 3582(c)(2) to reduce a defendant's sentence, such a conclusion is a question of law that this court reviews de novo. *See United States v. Curry*, 606 F.3d 323, 327 (6th Cir. 2010).

**III**

Under 18 U.S.C. § 3582(c)(2), a defendant is eligible for a sentence reduction if: (1) the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission"; and (2) such reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c). We have clarified that to satisfy the second requirement, "a guidelines amendment must 'have the effect of lowering the defendant's applicable guideline range.'" *Hameed*, 614 F.3d at 269 (quoting U.S.S.G. § 1B1.10(a)(2)(B)); *see also United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010). Joiner claims that Amendment 750, which lowered the § 2D1.1 base offense levels for crack-cocaine offenses, entitles him to a sentence reduction under § 3582(c). Assuming without deciding that Joiner's sentence was based on § 2D1.1 and thus that he satisfies the first requirement for § 3852(c) sentence-reduction eligibility, Joiner's appeal fails, as Amendment 750 does not have the effect of lowering his "applicable guideline range."

**A**

The primary issue in this appeal revolves around the meaning of the term "applicable guideline range." Amendment 750 provided, for the first time, a definition of this term. It did so by amending Application Note 1(A) to U.S.S.G. § 1B1.10 to read:

> Eligibility.—Eligibility for consideration under 18 U.S.C. 3582(c)(2) is triggered only by an amendment listed in subsection (c) that lowers the applicable guideline range *(i.e., the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance).* Accordingly, a reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. 3582(c)(2) and is not consistent with this policy statement if: (i) none of the amendments listed in subsection (c) is applicable to the defendant; or (ii) an amendment listed in subsection (c) is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (*e.g.*, a statutory mandatory minimum term of imprisonment).

U.S.S.G. § 1B1.10 cmt. n.1(A) (emphasis added). Thus, the sentencing guidelines now affirmatively indicate that a defendant's "applicable guideline range" is the range that results from applying U.S.S.G. § 1B1.1(a).

Turning to this section of the guidelines, § 1B1.1(a) reads as follows:

(a) The court shall determine the kinds of sentence and the guideline range as set forth in the guidelines (*see* 18 U.S.C. 3553(a)(4)) by applying the provisions of this manual in the following order, except as specifically directed:

> (1) Determine, pursuant to § 1B1.2 (Applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction. *See* § 1B1.2.
>
> (2) Determine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed.
>
> (3) Apply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three.
>
> (4) If there are multiple counts of conviction, repeat steps (1) through (3) for each count. Apply Part D of Chapter Three to group the various counts and adjust the offense level accordingly.
>
> (5) Apply the adjustment as appropriate for the defendant's acceptance of responsibility from Part E of Chapter Three.
>
> (6) Determine the defendant's criminal history category as specified in Part A of Chapter Four. Determine from Part B of Chapter Four any other applicable adjustments.
>
> (7) Determine the guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category determined above.
>
> (8) For the particular guideline range, determine from Parts B through G of Chapter Five the sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution.

U.S.S.G. § 1B1.1(a). Important to our inquiry is § 1B1.1(a)(8)'s indication that Part G of Chapter Five, which contains a provision incorporating any relevant statutory minimum into a defendant's guideline range, *see* U.S.S.G.§ 5G1.1, is part of the initial § 1B1.1(a) calculus.

Thus, by the terms of §§ 1B1.1(a)(8) and 5G1.1, when a statutory minimum falls above a defendant's § 5A guideline range—as was the case at Joiner's original sentencing—the statutory minimum becomes the defendant's new § 1B1.1(a) guideline range. And since the Application Note to § 1B1.10 now specifically equates a defendant's "applicable guideline range" with the range that results from the application of § 1B1.1(a), a statutory minimum that falls above a defendant's § 5A guideline range also becomes the defendant's "applicable guideline range."[2] *See also United States v. Williams*, 512 F. App'x 594, 601 (6th Cir. 2013) (holding that "where a mandatory minimum sentence applies that exceeds the otherwise applicable guideline range, the mandatory minimum sentence becomes the applicable guideline range"). Consequently, Joiner's "applicable guideline range" at the time of his original sentencing was simply his statutory minimum penalty of 240 months.[3]

**B**

Joiner disagrees with this conclusion, arguing that "applicable guideline range" is the range that exists before one accounts for any relevant statutory minimum penalty; according to Joiner, all provisions of § 1B1.1(a) except § 1B1.1(a)(8) should be included in the definition of "applicable guideline range." He reaches this conclusion by observing that the language of Application Note 1(A) tracks the language of

---

[2]Similarly, in the case of a statutory minimum that falls *within* a defendant's § 5A guideline range, the statutory minimum becomes the floor of the defendant's § 1B1.1(a) guideline range and thus the floor of his "applicable guideline range." Accordingly, for a defendant who is subject to a statutory minimum that falls within his § 5A guideline range, his "applicable guideline range" begins at his statutory minimum penalty and ends at the upper boundary prescribed in the § 5A Sentencing Table.

[3]We also note that "there is nothing anomalous with the approved 'range' being a single point, . . . [as t]he general import of 'range' in the guideline architecture is to specify all possible sentences that a judge can give without entering the areas of considerations of 'departures from the guideline range' as governed by §§ 5K1.1-5K2.24 of the guidelines." *United States v. Jones*, 569 F.3d 569, 576 (6th Cir. 2009) (Boggs, C.J., concurring in part and dissenting in part).

§ 1B1.1(a)(7), inferring from this similarity that the one sub-subsection to follow, i.e., § 1B1.1(a)(8), is excluded from the definition of "applicable guideline range." Yet Application Note 1(A) unambiguously references § 1B1.1(a) in its entirety.[4] And even more convincingly, the Application Note goes on to state: "Accordingly, a reduction in the defendant's term of imprisonment . . . is not consistent with this policy statement if . . . [an] amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision *(e.g., a statutory mandatory minimum term of imprisonment)*." U.S.S.G. 1B1.10 cmt. n.1(A) (emphasis added). In sum, the Application Note makes clear that the "applicable guideline range" is the range that results from applying § 1B1.1(a) in its entirety, including incorporation of any relevant statutory minimum.

Joiner also invokes U.S.S.G. § 1B1.10(b)(2)(B) in support of his definition of "applicable guideline range." In general, the sentencing guidelines prohibit a court from reducing a defendant's sentence to a term that is below his amended § 5A guideline range, i.e., the range that is used for the purposes of his sentence reduction. *See* U.S.S.G. § 1B1.10(b)(2)(A). However, U.S.S.G. § 1B1.10(b)(2)(B) provides an exception to this prohibition, stating that if a defendant was originally sentenced below his "applicable guideline range" due to a departure for substantial assistance, a court may, at a subsequent sentence-reduction proceeding, impose a sentence that is "comparably less than the amended guideline range" to reflect the defendant's substantial assistance. U.S.S.G. § 1B1.10(b)(2)(B). Joiner argues that this exception would be unnecessary under our definition of "applicable guideline range" because under that definition, a

---

[4]The 2010 revisions to § 1B1.1 further support our reading that all eight sub-subsections of U.S.S.G. § 1B1.1(a) should be considered together when calculating a defendant's "applicable guideline range." Unlike the current version of § 1B1.1—which contains subsections (a), (b), and (c), with section (a) further broken into eight sub-subsections—the pre-2010 version of § 1B1.1 consisted of nine subsections lettered (a) through (i), with no sub-subsections. *Compare* U.S.S.G. § 1B1.1 (2010) *with* U.S.S.G. § 1B1.1 (2009). In 2010, the first eight of those lettered subsections—including subsection (h), which requires application of Part G of Chapter Five, the provision incorporating statutory minimums—were grouped together as sub-subsections (a)(1) through (a)(8), while the last lettered subsection, (i)—which deals with Parts H and K of Chapter Five, specific offender characteristics and departures—was left as a separate subsection (b). Thus, the 2010 revisions affirmatively grouped together eight items of equal dignity while expressly excluding a ninth item, buttressing our holding that the eight items in § 1B1.1(a) form a single computational package for calculating a defendant's "applicable guideline range."

defendant whose mandatory minimum was pierced by a substantial-assistance motion would not be eligible for a sentence reduction and thus would never have a need for the aforementioned exception.    Yet Joiner forgets about the defendant whose original "applicable guideline range" fell completely above a statutory minimum or the defendant who received a substantial-assistance departure but who was not subject to a statutory minimum.  In both cases, § 1B1.10(b)(2)(B) would allow such a defendant to receive a sentence reduction below his amended guideline range when he otherwise could not obtain such a result.  *See also Williams*, 512 F. App'x at 601–02 (holding that U.S.S.G. § 1B1.10(b)(2)(B) and its corresponding application note are not inconsistent with a defendant's statutory minimum affecting his "applicable guideline range").   Thus, Joiner's argument that our definition of "applicable guideline range" would render § 1B1.10(b)(2)(B) mere surplusage is not well taken.

Finally, Joiner cites three cases from our sister circuits, claiming that these cases adopt a definition of "applicable guideline range" that excludes a defendant's statutory minimum.  We begin by noting that two of the cases cited by Joiner, *United States v. Wren*, 706 F.3d 861 (7th Cir. 2013), and *United States v. Liberse*, 688 F.3d 1198 (11th Cir. 2012), do not adopt the definition of "applicable guideline range" supported by Joiner or, for that matter, present factual scenarios even remotely analogous to Joiner's.

In *Wren*, the Seventh Circuit reviewed the sentence-reduction appeal of two defendants whose original § 5A guideline ranges were each entirely above their statutory minimums.    Accordingly, the defendants' statutory minimums played no role in determining the applicable guideline ranges used at their original sentencings.  *Wren*, 706 F.3d at 862.  After Amendment 750, however, the defendants' § 2D1.1 base offense levels were lowered to the extent that their statutory minimums were either within or above their new § 5A guideline ranges.  *Ibid*.  The Seventh Circuit held that because the defendants' statutory minimums were not used to calculate their applicable guideline ranges during their original sentencings, those minimums should remain inoperative at the time of sentence reduction even though, by virtue of the defendants' lower § 2D1.1

base offense levels, the minimums had become relevant. *Id*. at 863. It reached this conclusion by noting that "§ 1B1.10(b)(1) tells a court not to work through the sequence in § 1B1.1 as if it were sentencing the prisoner afresh," but rather to start with the "original calculation, then swap [only] the amended Guideline range into that calculation without making any other change." *Ibid*. Thus, it reasoned that "if § 5G1.1 did not affect the original [sentencing] calculation, it does not come into play when a court considers the effect of a retroactive change to the Guidelines." *Ibid*.

It is unclear how *Wren* supports the notion that a statutory minimum is not part of a defendant's "applicable guideline range." *Wren* merely indicated that if § 5G1.1 was not used during the original sentencing—due to a statutory minimum's being below a defendant's § 5A guideline range—the statutory minimum could not later play a role during sentence-reduction proceedings.[5] In fact, *Wren* implies that in situations where the statutory minimum does fall within or above a defendant's § 5A guideline range at the original sentencing—thus triggering § 5G1.1—the statutory minimum would indeed be part of the defendant's "applicable guideline range" for the purposes of sentence reduction. *Id*. at 862 (indicating that "when all or part of a Guideline range lies below a statutory minimum sentence, the statutory minimum becomes the lower bound of the range" and thus that if U.S.S.G. § 5G1.1 had applied at the defendants' original sentencing, "the ranges for [the defendants would not have] really been reduced by Amendment 750").

With regard to the Eleventh Circuit's opinion in *Liberse*, that case, like *Wren*, dealt with a situation where, at the defendant's original sentencing, his statutory minimum fell below his § 5A guideline range and thus played no role in calculating his "applicable guideline range." *Liberse*, 688 F.3d at 1199-1200. However, at the time he moved for a sentence reduction, Liberse's statutory minimum, by virtue of Amendment

---

[5]While not pertinent to this appeal, we also would question whether U.S.S.G. § 1B1.10(b)(1) requires a court to ignore a statutory minimum that becomes relevant at a sentence-reduction proceeding due to the lowering of the § 2D1.1 base offense levels. While § 1B1.10(b)(1) does state that "the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected," this language would not appear to require a court to ignore the altered operation of a non-amended guideline that is triggered by changes to an amended guideline.

750, fell entirely above his new, amended § 5A guideline range. *Id.* at 1200. The *Liberse* court began by refusing to address the first disputed issue: whether the FSA's new statutory minimums applied retroactively during sentence-reduction proceedings. *Id.* at 1202. However, the court, speaking hypothetically, went on to hold that were the FSA *not* retroactive for such proceedings and were Liberse thus "subject to the same . . . mandatory minimum that he was subject to at his original sentencing[,] . . . that mandatory minimum would be[come] his amended guidelines range because it [was now] greater than the top of his otherwise applicable amended guidelines range." *Ibid.* In other words, the *Liberse* court specifically held that when a defendant's statutory minimum is greater than his amended § 5A guideline range, the statutory minimum controls for the purposes of sentence reduction. Of course, in Liberse's case, his controlling statutory minimum was still below the *original* § 5A guideline range used at his first sentencing, thus he was eligible for a sentence reduction. But far from contradicting our definition of "applicable guideline range," the *Liberse* court's express reliance on Liberse's original statutory minimum to determine whether he was eligible for a sentence reduction is in perfect accord with the definition of "applicable guideline range" that we adopt today.

Finally, Joiner points to *United States v. Savani*, Nos. 11-4359/4494 & 12-1034, 2013 WL 2462941, at *9 (3rd Cir. June 10, 2013), in which the Third Circuit did indeed adopt his argument that a defendant's statutory minimum should not be included as part of his "applicable guideline range." The court in *Savani* reached this conclusion by first finding that "the guidelines are grievous[ly] ambiguous and hopelessly imprecise regarding the Commission's description of 'applicable guideline range' contained within the revised Application Note 1(A)." *Ibid.* (alteration in original) (internal quotation marks omitted). The court thus applied the rule of lenity to hold that § 1B1.1(a)(8)—and its incorporation of a defendant's statutory minimum—should be ignored when defining the term "applicable guideline range." *Ibid.* As discussed *supra* in Section III.A, we find no such ambiguity in Application Note 1(A)'s definition of the term "applicable guideline range," and we reject *Savani*'s invocation of the rule of lenity in the face of clear language defining that term.

**C**

Having defined "applicable guideline range," the next question is whether Amendment 750 had the effect of lowering Joiner's "applicable guideline range." Because, as mentioned earlier, Joiner initially had a base offense level of 27 (30 minus a three-level reduction for acceptance of responsibility) and a criminal-history category of V, his § 5A guideline range was 120-150 months at the time of his original sentencing.  However, the statutory minimum of 240 months required that Joiner's ultimate "applicable guideline range" be 240 months.  The district judge departed below this range based on the government's motion for substantial assistance, sentencing Joiner to 107 months of imprisonment.

After Amendment 750, Joiner's amended § 2D1.1 base offense level—for the purposes of his sentence-reduction proceeding—is now 28, *see* U.S.S.G. § 2D1.1(c) (2012), less three levels for acceptance of responsibility.  Thus, with a base offense level of 25 and a criminal-history category of V, Joiner's amended § 5A guideline range would normally be 100-125 months.  However, the original 240-month statutory minimum still applies to Joiner.  As discussed earlier, we have made clear that the FSA's new lower statutory minimums do not apply to defendants sentenced before passage of the FSA.  *See Dorsey*, 132 S. Ct. at 2336; *Hammond*, 712 F.3d at 336.  Thus, while Joiner would be subject to a statutory minimum of 120 months had he been sentenced post-FSA, the pre-FSA date of his sentencing clearly requires application of the 240-month minimum.  Because Joiner's statutory-minimum penalty remains 240 months, his "applicable guideline range" also remains 240 months.

While the district judge did, pursuant to the methodology in Joiner's plea agreement, use the § 2D1.1 crack-cocaine guidelines to assist in assessing the amount of Joiner's substantial-assistance departure, our opinion in *Hameed* indicates that "the appropriate starting point for calculating a downward departure under 18 U.S.C. § 3553(e) is the mandatory minimum sentence itself."  *Hameed*, 614 F.3d at 268 (internal quotation marks omitted).  Thus, "[al]though § 2D1.1 surely provided a 'guideline range,' it did not provide one that was 'applicable' to a departure for

substantial assistance under § 3553(e) and § 5K1.1." *Ibid.* We specifically indicated that this held true even when, as in Hameed's case, as well as Joiner's, the sentencing judge "acceded to the parties' request that he take the base offense level prescribed by § 2D1.1 as his starting point [for a substantial-assistance departure]," reasoning that the § 2D1.1 base offense level "was not 'applicable' because it was not the correct point from which the departure should have been measured." *Ibid.*

Accordingly, in the case of a defendant who, based on his substantial assistance, receives a sentence below an otherwise applicable statutory minimum, it cannot be said that a subsequent amendment to the sentencing guidelines has had the effect of lowering the defendant's "applicable guideline range" if he is still subject to that same statutory minimum. Given that Joiner is subject to the same statutory-minimum sentence as that which was in effect at the time of his original sentencing, Amendment 750 does not have the effect of lowering his "applicable guideline range."

## IV

For the foregoing reasons, we affirm the decision of the district court denying Joiner's motion for a sentence reduction under 18 U.S.C. § 3582(c).